# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| YOLANDA WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-7911 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| JP MORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Yolanda Walker brings claims against her former employer, Defendant JP Morgan Chase Bank, under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"). Before the Court are Defendant's motion for summary judgment [34] and renewed motion for sanctions [28]. For the reasons that follow, the Court grants Defendant's motion for summary judgment [34] and denies Defendant's renewed motion for sanctions [28]. The Court will enter a final judgment and close the case.

**I.     Background**

    **A.     Factual Background**

The Court takes the relevant facts from Defendant's Local Rule 56.1 Statement of Material Facts [36] and supporting exhibits. Plaintiff failed to file a response to Defendant's motion or Defendant's Local Rule 56.1 Statement of Material Facts. Therefore, pursuant to Local Rule 56.1(b)(3)(C), Defendant's fact statements are deemed admitted. N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); see also

*Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (affirming district court's decision to admit the facts set forth in moving party's Local Rule 56.1 submission where nonmovant failed to timely respond or submit its own Local Rule 56.1 statement); *De v. City of Chicago*, 912 F. Supp. 2d 709, 712–13 (N.D. Ill. 2012) ("The Seventh Circuit has repeatedly held that a district court has broad discretion to require strict compliance with Local Rule 56.1." (citation and internal quotation marks omitted)).

Plaintiff began working for Defendant as a bank teller on or about May 7, 2011. [36, at ¶ 9.] Plaintiff's employment was terminated on February 13, 2014. [*Id.* at ¶ 56.] Plaintiff was responsible for providing customer service and conducting financial transactions. [*Id.* at ¶¶ 14–15.] Plaintiff testified that it was important to comply with and follow Defendant's rules, regulations, and Defendant's Branch Policies & Procedure Manual ("P&P"). [*Id.* at ¶ 15.] She was also a certified notary and was required to follow Defendant's notary P&P.

The P&P set forth rules and procedures for Defendant's employees. Among other things, the P&P sets forth the Scanning Documents Policy, which requires employees to scan certain account documents such as signature cards; the Security Controls Policy and the Information Security Policy, both of which require employees to lock their computers when leaving their workstations; and the Notary Procedures Policy, which sets forth the steps necessary to ensure compliance with state and county law and requires notaries to complete their entries in their notary journals with all the required information, including the date and the location where the notarization occurred. [*Id.* at ¶¶ 6–7.]

Defendant also maintains a Corrective Action Policy, which provides that employees' job performance must meet the requirements and objectives for his or her position. Managers are encouraged to provide guidance and feedback regarding expectations. Corrective action may be

taken because of unsatisfactory performance and can be applied at Chase's discretion. Corrective action may include coaching, counseling, or written warnings. If an employee does not agree with a written warning, he or she may provide a rebuttal. [*Id.* at ¶ 8.]

Defendant maintains an Accommodating Disabilities Policy, which instructs employees to contract Human Resources for any disability-related accommodation request. [*Id.* at ¶ 3.] Defendant also maintains an FMLA Policy, which provides for intermittent leave ("iFMLA") for employees who suffer from serious episodic health conditions. As Plaintiff was aware, employees on approved iFMLA were required to report such absences by notifying their managers and calling a designated phone number to ensure the absence is protected. [*Id.* at ¶ 2.]

Plaintiff testified that she was diagnosed with chronic hypertension (high blood pressure) at some point between 2009 and 2011. [*Id.* at ¶ 16.] Plaintiff further testified that as a result of her condition, she is weak, extremely tired, and has pain in the back of her neck. According to Plaintiff, these symptoms come and go. [*Id.* at ¶ 17.] Plaintiff explained that from 2012 through the end of her employment with Defendant in early 2014, her condition affected her daily living activities in that she struggled to get up in the morning because she was extremely tired and forgetful. [*Id.* at ¶ 18.] However, Plaintiff could not recall telling her last two direct supervisors, Thomas Kregul or Eva Braxton, that she had this condition or that she was disabled. Rather, she assumed that "everyone knew" that she was disabled because she had approval to take iFMLA. [*Id.* at ¶ 19.] Braxton states that she was unaware of Plaintiff's condition. [*Id.* at ¶ 56.]

At the beginning of January 2012, Plaintiff requested iFMLA through July 5, 2012 for her health condition. Defendant approved this request. [*Id.* at ¶¶ 20–21.] On September 12, 2012, Plaintiff again requested iFMLA through March 24, 2013 for her illness. Defendant also approved this request. [*Id.* at ¶ 22.] On May 28, 2013, Plaintiff requested iFMLA beginning in

April 2013, which was approved through October 15, 2013. [*Id.* at ¶ 23.] On October 18, 2013, Plaintiff's iFMLA was again approved through April 16, 1014. Plaintiff testified that she did not miss work continuously for several weeks at a time, but rather she was permitted to come in late, leave early, or miss a day "here and there" when she was not feeling well. [*Id.* at ¶ 30; 36 Exhibit A (Plaintiff's Deposition), at 84:8–85:7.] Plaintiff testified that she was never denied iFMLA approval and that all of the dates she had taken were protected. [*Id.* at ¶¶ 26, 30–31.]

Despite having been notified of Defendant's Policy on Accommodating Disabilities, Plaintiff admittedly never contacted HR to request an accommodation. [36, at ¶ 32.] Plaintiff testified that at some point, she asked Kregul and the Assistant Branch Manager at the time to remove her notary duties and have someone else perform them. When asked "what aspect of the notary policies and procedures were you unable to perform as a result of your disability," Plaintiff responded that she was not "unable to perform" her notary duties, but rather she did not want to perform them because she did not feel comfortable with them. [*Id.* at ¶ 33.] She further testified that she did not "have the bandwith" to learn the new journal requirements for notaries and that she "didn't want to have to deal with words like pursuant and this and that." [*Id.*; see also 36 Exhibit A, 285:13–24.] Plaintiff testified that when she requested to be relieved of her notary duties, she did not blame it on her illness. [36, at ¶ 34.] She further testified that she did not tell Braxton that she had an illness that prevented her from remembering the notary requirements. [36, Exhibit A, at 156:10–13.] Plaintiff testified that she let Braxton know that she was not feeling well and "this is making me not comfortable with being able to do my job because I'm not feeling well," but she could not recall when she had this conversation with Braxton. [*Id.* at 156:22–157:1.] Plaintiff claims that she also asked her managers not to make her go into the vault so that she would not have to follow dual control procedures. [36, at ¶ 33.]

However, she testified that this had nothing to do with her disability. [*Id.*; 36 Exhibit A, at 2743:16–274:11.]

On July 29, 2014, Plaintiff's branch manager at the time, Kregul, issued Plaintiff's midyear performance review for 2013. He rated Plaintiff a "low meets expectations," which is the second lowest rating within Defendant's performance evaluation scale. [36, at ¶ 36.] On August 23, 2016, Kregul issued a written warning to Plaintiff for overall unsatisfactory performance, including insensitively commenting upon the ethnicity of a customer, as well as other P&P violations such as failing to scan and file signature cards, giving confidential information to a customer without properly verifying the customer's identity, and closing an account that the customer had not requested be closed. [*Id.* at ¶¶ 37–40.] Plaintiff was instructed to review the P&P and warned that "[f]ailure to improve performance can result in further corrective action, up to and including termination." [*Id.* at ¶ 40.] Plaintiff wrote a rebuttal, stating that she disagreed that she should be written up for giving confidential information to a non-authorized signer and arguing that the signer was not properly removed from the account. Plaintiff contended that she did not remember making a racially insensitive comment about a customer. She did not dispute the other conduct in the written warning, but stated that she thought she should have been coached for this conduct instead of written up. [*Id.* at ¶ 42.]

In early November 2013, Kregul left his position with Defendant and Braxton assumed the position of branch manager. According to Braxton, she observed Plaintiff's performance failings. For example, in December, Braxton coached Plaintiff multiple times for failing to follow P&P for making entries in her notary journal. On January 7, 2014, Braxton issued a written warning for Plaintiff's failure to adhere to P&P regarding her notary journal, informing her that: "such controls are very important to safeguard clients and Chase," and that in the event

5

of further unsatisfactory job performance, "further corrective action may occur, up to and including termination of employment." [*Id.* at ¶ 47.] Plaintiff agreed that the written warning had nothing to do with her attendance. [*Id.*]

In Plaintiff's 2013 year-end review, Plaintiff was rated "needs improvement," which is the lowest possible rating. Plaintiff chose not to comment or dispute her review. [*Id.* at ¶ 48.] On January 13, 2014, a customer complained to the branch that Plaintiff was rude and hung up on her when she called from overseas for assistance. [*Id.* at ¶ 49.] The following day, a customer complained that Plaintiff failed to link a debit card correctly, and Braxton observed Plaintiff leave her workstation unlocked, in violation of the P&P. [*Id.* at ¶¶ 49–50.] Later that month, Plaintiff failed to scan a customer's signature card and failed to initial the dual control log. [*Id.* at ¶¶ 51–52.] On February 12, 2014, Plaintiff wrote the incorrect amount on a deposit slip. [*Id.* at ¶ 53.]

On February 12, 2014, Braxton submitted a recommendation for termination of Plaintiff's employment to her manager, Na'Ree Hankins, and Market Manager Jeffrey Papa. Braxton recommended Plaintiff's terminated due to unsatisfactory job performance and failure to improve after two written warnings and several coaching sessions. [*Id.* at ¶ 54.] Hankins and Papa approved Braxton's request, and on February 13, 2014, Hankins and Braxton informed Plaintiff that she was being terminated. [*Id.* at ¶¶ 55–56.] Later that day, Plaintiff complained to the HR hotline that she was terminated while on iFMLA. Jen Ellefson from HR investigated Plaintiff's complaint regarding her termination and concluded that Plaintiff's termination was based on her unsatisfactory job performance, not her attendance or iFMLA. Therefore, HR informed Plaintiff that the termination would stand. [*Id.* at ¶ 57.] In her deposition, Plaintiff was

asked if she had any reason to believe that her termination was motivated by her use of iFMLA, to which Plaintiff responded, "I don't know." [*Id.* at ¶ 58; 36 Exhibit A, at 162:2–4.]

### B. Procedural Background

Plaintiff filed this lawsuit on September 8, 2015, bringing claims under the FMLA and the ADA. [See 1, 9.] Plaintiff alleges that Defendant denied her FMLA leave [9, at ¶ 5], refused to provide her with reasonable accommodations for her disability [*id.* at ¶ 30–31], retaliated and discriminated against her for taking FMLA leave by reassigning her to "a position requiring less skill and training" [*id.* at ¶¶ 10–11], assigning her new job duties, "harassing her with regard to her schedule and hours in a way that other employees were not subjected" [*id.* at ¶ 29], and terminating her employment [*id.* at ¶ 10].

On June 24, 2016, Defendant moved for sanctions up to and including dismissal, arguing that Plaintiff had "engaged in a pattern of contumacious delay and noncompliance with discovery." [20, at ¶ 2.] The Court denied without prejudice Defendant's motion for sanctions and ordered Plaintiff to produce sufficient discovery responses by September 23, 2016. [26.] The Court also granted Defendant leave to file a renewed motion for sanctions to the extent that Defendant found the discovery responses incomplete. [*Id.*] On October 7, 2016, Defendant brought a renewed motion for sanctions, explaining that although Plaintiff had produced some information, her discovery responses remained "woefully insufficient." [28, at 2.] Defendant requested the following sanctions:

> drawing an adverse inference that Plaintiff has failed to mitigate her damages; and/or barring Plaintiff from introducing evidence to support her claim for damages that was not disclosed as of September 23, 2016; and/or ordering Plaintiff to reimburse Defendant for fees it has incurred in attempting to secure Plaintiff's cooperation and compliance with discovery; and/or entering an order advising Plaintiff that further failure to comply with the Federal Rules of Civil Procedure and/or this Court's orders will result in dismissal.

[*Id.* at 11.]

On March 24, 2017, Defendant moved for summary judgment [34]. The Court set a briefing schedule, with Plaintiff's response brief to be filed by May 11, 2017. However, the Court waited several weeks past this deadline, and Plaintiff never filed a response brief. Thus, the Court will decide Defendant's motions for summary judgment [34] based on Defendant's opening brief, Local Rule 56.1 Statement of Material Facts, and supporting exhibits. See *Raymond*, 442 F.3d at 611 (holding that the district court did not abuse its discretion in refusing to accept a response brief filed three days late or in granting summary judgment without considering the late-filed response and accompanying Local Rule 56.1 statement).

## II.    Legal Standard

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Fed. R. Civ. P. 56(c). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir.2011) (quoting *Celotex Corp.,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. In evaluating a motion for summary judgment, the Court will construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). However, the Court will not draw inferences that are "supported by only speculation or conjecture," *Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016), cert. denied, 2016 WL 4367440 (U.S. Oct. 17, 2016) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)) (internal citations omitted), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney*, 526 F.3d at 1104. Although a failure to timely respond to the moving party's Local Rule 56.1 statement results in "deeming admitted" the moving party's factual statements, a nonmovant's failure to respond to a summary judgment motion or failure to comply with Local Rule 56.1 does not, of course, automatically result in

judgment for the movant. *Raymond*, 442 F.3d at 608. The ultimate burden of persuasion remains on the moving party—Defendants, in this case—to show that it is entitled to judgment as a matter of law.

## III. Analysis

Plaintiff brings claims of FMLA retaliation, FMLA interference, failure to accommodate in violation of the ADA, ADA retaliation, and harassment in violation of the ADA. Defendant moves for summary judgment on all claims, arguing that Plaintiff's failure to accommodate and harassment claims are procedurally barred and that Plaintiff lacks evidence to survive summary judgment on all claims. The Court will address each argument in turn.

### A. Procedural Bar

Defendant argues that Plaintiff's ADA failure to accommodate and harassment claims are procedurally barred because Plaintiff did not raise these claims in her Equal Employment Opportunity Commission ("EEOC") charge. Plaintiff's EEOC charge states:

> Statement of Harm: I suffer from a disability that required me to take Intermittent FMLA leave. I informed my supervisors of my disability. After being approved for Intermittent FMLA leave, I was retaliated against and my managers denied me time off for my disability and FMLA leave. This discriminatory treatment eventually led to my termination. I was specifically targeted, singled out, and treated differently than similar [sic] situated employees based on my disability.
>
> Statement of Discrimination: I believe that I have been discriminated and retaliated against because of my disability in violation of Title I of the Americans with Disabilities Act of 1980.

[36-1, 111.] A plaintiff is barred from raising a claim in district court that has not been raised in her EEOC charge, unless the claim is "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999) (citing *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). "This rule serves the dual purpose of affording the

EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee complains." *Patterson v. Triangle Tool Corp.*, 2016 WL 5374123, at *2 (E.D. Wis. Sept. 26, 2016). The "reasonable relationship" test for determining whether an EEOC charge encompasses the claims in a complaint grants the plaintiff "significant leeway," and the plaintiff need not allege in an EEOC charge each and every fact that forms the basis for the claims in her complaint. See *Cheek*, 31 F.3d at 500.

Defendant argues that Plaintiff's allegations that she was "targeted," "singled out," "treated differently," "retaliated against," and eventually "terminat[ed]" after she was approved for iFMLA leave are insufficient to exhaust administrative remedies for her failure to accommodate claim. However, Plaintiff also alleges in her EEOC charge that she was "denied [ ] time off for [her] disability." The Court concludes that this is reasonably related to the failure to accommodate claim in Plaintiff's complaint. Although the failure to accommodate claim in Plaintiff's complaint is premised on Defendant's alleged refusal to remove her notary duties, rather than on allegations that Defendant denied Plaintiff time off for her disability, the claim in the complaint could reasonably have been expected to grow out of an EEOC investigation of the allegations in the charge. See *Cheek*, 31 F.3d at 500.

Defendant also contends that Plaintiff's EEOC charge does not allege that she was "harassed" because of her disability. However, Plaintiff does allege in her EEOC charge that she was "specifically targeted, singled out, and treated differently than similar [sic] situated employees based on my disability." In her complaint, Plaintiff alleges that she was "harass[ed] her with regard to her schedule and hours in a way that other employees were not subjected." [9, at ¶ 29.] The Court concludes that Plaintiff's harassment claim is reasonably related to and

arises out of the same facts as the allegations in her EEOC charge, and thus Plaintiff can proceed on her harassment claim, to the extent that a disability-based harassment claim is cognizable under the ADA.[1] See *Girten v. Town of Schererville*, 2009 WL 2970388, at *3 (N.D. Ind. Sept. 10, 2009) (construing plaintiff's EEOC charge liberally and concluding that plaintiff's failure to accommodate charge arose out of the same facts as the wrongful termination claim alleged in her EEOC charge such that anyone investigating the events would have necessarily uncovered both claims, and thus permitting plaintiff to proceed on her failure to accommodate charge). Since Plaintiff's claims are not procedurally barred, the Court will proceed to the merits of Defendant's arguments.

### B. Merits

Defendant argues that the Court should grant summary judgment in its favor because Plaintiff has not produced any evidence from which a reasonable jury could find for Plaintiff on any of Plaintiff's claims. The Court agrees. Indeed, Defendant contends that Plaintiff has not even attempted to obtain meaningful evidence to prove her case, as Plaintiff did not take a single deposition, despite the fact that discovery was open for nearly one year. [35, at 1 n.1.]

#### 1. FMLA Retaliation

Plaintiff alleges in her amended complaint that Defendant retaliated against her for taking iFMLA leave by reassigning her to "a position requiring less skill and training" upon her return from leave and by terminating her employment. [9, at ¶¶ 10–11.] The FMLA prohibits employers from discharging or otherwise discriminating against employees for exercising their

---

[1] The Seventh Circuit has not recognized explicitly an ADA claim based on hostile environment or harassment but has assumed, without deciding, the existence of such a cause of action. See *Silk v. City of Chicago*, 194 F.3d 788, 803 (7th Cir. 1999); *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) ("Such a claim [of a hostile work environment under the ADA] would seem to arise under the general prohibition against discrimination with respect to terms or conditions of employment contained in § 12112(a).").

rights under the FMLA. 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(a)(2); see also *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015). An employer may not consider the taking of FMLA leave as a negative factor in employment actions. 29 C.F.R. § 825.220(c); *King v. Preferred Tech. Grp.,* 166 F.3d 887, 891 (7th Cir. 1999). To establish a *prima facie* case of FMLA retaliation under the direct method, Plaintiff must establish that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) there exists a causal link between the protected activity and the adverse action. *Ryan*, 837 F. Supp. 2d at 839.

Here, Defendant does not dispute that Plaintiff engaged in a statutorily protected activity by requesting and obtaining approval for iFMLA leave. Plaintiff alleges two adverse employment actions: a reassignment to "a position requiring less skill and training" and her termination. However, Plaintiff testified at her deposition that she was not actually reassigned to a position requiring lesser skills or different working hours. [36, at ¶ 64; see also 36, Exhibit A, at 252:16–253.] Thus, the only adverse action that could support Plaintiff's FMLA claims is her termination.

The Court concludes that Plaintiff has not offered any evidence supporting her claim that she was terminated because she took iFMLA leave; rather, the uncontested facts establish that Plaintiff was terminated because of performance failings. It is undisputed that Plaintiff's performance did not meet expectations, despite multiple coaching attempts and written warnings, and that she failed to follow P&P on notary procedures, scanning documents, security controls, dual control, and other general customer service issues. [36, at ¶¶ 37–40 (Plaintiff received a written warning from Kregul on August 23, 2016 for overall unsatisfactory performance, including insensitively commenting upon the ethnicity of a customer, as well as other P&P violations such as failing to scan and file signature cards, giving confidential information to a

customer without properly verifying the customer's identity, and closing an account that the customer had not requested be closed); ¶ 47 (Plaintiff received coaching and a written warning from Braxton regarding her notary performance); ¶¶ 49–53 (Plaintiff hung up on a customer calling from overseas for assistance, failed to link a debit card correctly, and wrote the incorrect amount on a deposit slip).] Further, Plaintiff's performance was in decline. [See 36, at ¶ 36 (Plaintiff received the second lowest rating at her 2013 midyear performance review); *id*., at ¶ 48 (Plaintiff received lowest possible rating at her 2013 year-end review).] On several occasions, Plaintiff's failure to follow Defendant's P&P put confidential customer information at risk. [See *id.*, at ¶¶ 50–52 (Plaintiff left her workstation unlocked, failed to scan a customer's signature card, and failed to initial the dual control log).] "[E]mployers may fire employees for poor performance if they would have fired them for their performance regardless of their having taken [FMLA] leave." *Ogborn v. United Food & Commercial Workers Union, Local No. 881*, 305 F.3d 763, 768 (7th Cir. 2002). Additionally, when Plaintiff was asked in her deposition if she had any reason to believe that her termination was motivated by her use of iFMLA, Plaintiff responded, "I don't know." [36, at ¶ 58; 36 Exhibit A, at 162:2–4.] Thus, Plaintiff has failed to demonstrate that a reasonable jury could find for Plaintiff on her FMLA retaliation claim under the direct method.

Likewise, Plaintiff fails under the burden shifting framework *of McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973). Under the burden shifting method, Plaintiff must first state a *prima facie* case by demonstrating, by a preponderance of the evidence, that: (1) she was meeting Defendant's legitimate expectations, (2) suffered an adverse employment action, and (3) was treated less favorably that similarly-situated employees who did not request FMLA leave. *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 800 (7th Cir. 2014).

Here, Plaintiff cannot show that she met Defendant's legitimate employment expectations because of her performance shortcomings discussed above. Nor has Plaintiff identified a similarly-situated comparator who was treated more favorably. When asked to identify comparators, Plaintiff identified "[t]he stronger bankers, the bankers that were there every day." [36, at ¶ 36.] When asked who these bankers were, Plaintiff identified Gia Lake and "three or four bankers." [*Id.*] However, Plaintiff conceded that she had "no idea" whether these other bankers ever took FMLA leave, had no knowledge of how these other bankers were scrutinized or evaluated, and had no knowledge of their performance reviews or potential discipline. In order for an individual to be similarly situated to Plaintiff, Plaintiff must show that the individual is "directly comparable to her in all material respects." *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). The Seventh Circuit has cautioned that in order to show that a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a "comparable set of failings." See *id.* (rejecting comparators where plaintiff put forth no evidence that comparator's had performance reviews similar to plaintiff's); *Kinsella v. Am. Airlines*, Inc., 685 F. Supp. 2d 891, 903 (N.D. Ill. 2010) (rejecting comparators where plaintiff failed to present any evidence that would allow a meaningful comparison). Thus, Plaintiff has failed to demonstrate that a reasonable jury could find for Plaintiff on her FMLA retaliation claim under the burden shifting method.

Finally, the Court concludes that assessing cumulative all of the evidence presented by Plaintiff, as required by *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 763–66 (7th Cir. 2016), Plaintiff has failed to set forth specific facts showing a genuine issue for trial on her FMLA retaliation claim. Thus, the Court grants Defendant's summary judgment motion with respect to Plaintiff's FMLA retaliation claim.

## 2. FMLA Interference

Plaintiff alleges that Defendant interfered with her FMLA rights by denying her iFMLA leave and terminating her employment. [9, at ¶ 5, 10]. The FMLA also prohibits employers from interfering with, restraining, or denying the exercise of a right under the FMLA. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a)(1). To establish a claim of FMLA interference, Plaintiff must show that: (1) she was eligible for FMLA protection; (2) Defendant was covered by the FMLA; (3) Plaintiff was entitled to leave under the FMLA; (4) Plaintiff provided sufficient notice of her intent to take FMLA leave; and (5) Defendant denied the employee FMLA benefits to which she was entitled. See *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Ryan v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 837 F. Supp. 2d 834, 838–39 (N.D. Ill. 2011).

Defendant does not dispute that the first four elements have been satisfied. Further, Plaintiff testified at her deposition that she was not denied FMLA leave. [36, at ¶ 64; see also 36, Exhibit A, at 228: 10–14.] Thus, the only remaining issue is whether Defendant fired Plaintiff to prevent her from exercising her right to reinstatement to her position. See *Simpson v. Office of the Chief Judge of the Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir. 2009) ("Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights.").

An employee's right to be reinstated to her prior position upon return from FMLA leave is not absolute. See *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). "[A]n employee is not entitled to return to her former position if she would have been fired regardless of whether she took the leave." *Id.* Plaintiff must show that the termination was "illegally motivated by [her] choice to take leave," and not "motivated by other, valid reasons." *Simpson*, 559 F.3d at 712. The Court concludes that, as explained above, Plaintiff has not provided any

16

evidence from which a reasonable jury could find that she was terminated because of her iFMLA leave and not because of her performance issues. Thus, the Court grants Defendant's summary judgement motion with respect to Plaintiff's FMLA interference claim.

### 3. ADA Claims: Failure to Accommodate, Retaliation, and Harassment

Plaintiff alleges that Defendant violated the ADA by (1) scrutinizing and evaluating her performance more closely than others without disabilities, (2) giving her new job duties, (3) "harassing her with regard to her schedule and hours," (4) denying her a reasonable accommodation in the form of a modified schedule, and (5) terminating her because of her disability. [9, at ¶¶ 28–32.] Plaintiff's claims cannot survive summary judgment for numerous reasons. First of all, being "scrutinized" is not an actionable adverse employment action. See *Cole v. Illinois*, 562 F.3d 812, 816–17 (7th Cir. 2009) (holding that the adoption of an employee improvement plan that identified areas for improvement and subjected employee to "constructive assignment[s]" was not an adverse employment action and explaining that the Seventh Circuit has consistently required that an adverse employment action be "materially adverse"). Further, Plaintiff has not identified any similarly-situated comparators who received better treatment. And Plaintiff conceded in her deposition that she was not assigned new job duties and that her allegations regarding harassment were "all speculation." [36, Exhibit A, at 276:19–279:21.]

Plaintiff's failure to accommodate claim also fails because Plaintiff has not offered any evidence that she requested a modified schedule as an accommodation. Indeed, Plaintiff admittedly never contacted HR to request an accommodation. [36, at ¶ 32.] To the extent that Plaintiff is attempting to bring a failure to accommodate claim based on her request to be relieved of her notary duties or her vault duties, this claim also must fail. Plaintiff testified that when she requested to be relieved of her notary duties, she did not blame it on her illness. "A

reasonable accommodation is connected to what the employer knows about the specific limitations affecting an employee who is a qualified individual with a disability." *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005). Here, Plaintiff did not make her limitations known to her employer. [36, at ¶ 19 (Plaintiff could not recall telling her last two direct supervisors, Thomas Kregul or Eva Braxton, that she was disabled); ¶ 56 (Braxon was unaware of Plaintiff's condition).] Plaintiff further testified that she was not "unable to perform" her notary duties, but rather she "didn't want to have to deal with" learning the new notary procedures and that her desire not to go into the vault had nothing to do with her disability. [*Id.*, at ¶ 33–34; 36 Exhibit A, at 2743:16–274:11.] Thus, the Court grants summary judgment for Defendant on Plaintiff's failure to accommodate claim.

Additionally, Plaintiff's ADA retaliation claim fails because Plaintiff has provided no evidence that the relevant decision-makers knew of her disability, nor has she presented any evidence that she was terminated because of her disability. Instead, the record is replete with evidence that Plaintiff was terminated for performance failures. Thus, the Court grants summary judgment for Defendant on Plaintiff's ADA retaliation claim.

### C. Sanctions

Finally, the Court turns to Defendant's renewed motion for sanctions for Plaintiff's conduct during discovery. [28.] However, given the above ruling in Defendant's favor on Defendant's motion for summary judgment, the majority of Defendant's requested sanctions are moot. [See 28, at 11 (requesting as sanctions: drawing an adverse inference that Plaintiff has failed to mitigate her damages; and/or barring Plaintiff from introducing evidence to support her claim for damages that was not disclosed as of September 23, 2016; and/or entering an order advising Plaintiff that further failure to comply with the Federal Rules of Civil Procedure and/or

this Court's orders will result in dismissal).] The Court declines to order Plaintiff to reimburse Defendant for the fees it has incurred in attempting to secure Plaintiff's cooperation and compliance with discovery. Thus, Defendant's renewed motion for sanctions [28] is denied.

IV. **Conclusion**

For the reasons explained above, the Court grants Defendant's motion for summary judgment [34] and denies Defendant's renewed motion for sanctions [28]. The Court will enter a final judgment and close the case.

Dated: June 26, 2017

_____
Robert M. Dow, Jr.
United States District Judge